ZELLA KEYES, administratrix, *vs.* CONSTRUCTION SERVICE, INC. & another.

Hampden.    September 23, 1959. — April 4, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Infant. Actionable Tort. Stare Decisis. Words,* "Viable child."

If an unborn infant suffered bodily injury through negligence of one other than his mother at a time when he was so far formed and developed that, had he then been born, he would have been capable of living, and if he subsequently was born alive but later died as a result of such injury, there was a right of action for his death against the negligent person.

TORT. Writ in the Superior Court dated March 25, 1959.

A demurrer was heard by *Lurie,* J.

The case was argued in September, 1959, before *Wilkins,* C.J., *Williams, Counihan, Whittemore, & Cutter,* JJ., and afterwards was submitted on briefs to *Spalding,* J.

*William A. Godfrey,* for the plaintiff.

*George W. Leary,* for the defendants.

WILLIAMS, J.   The plaintiff, administratrix of the estate of one Duncan Reed, appeals from an order of the Superior Court sustaining the defendants' demurrer to her amended declaration in which it is alleged that while her intestate was an existing viable child in his mother's womb he received bodily injury in a collision of automobiles, "causing him to be born prematurely, and which said bodily injuries resulted in his death." We are asked to reëxamine previous decisions of this court and again decide whether a child or his legal representative may recover in an action of tort for prenatal injuries caused by the negligence of a third party who was not the child's mother.

Our earliest decision was in 1884, *Dietrich* v. *Northampton,* 138 Mass. 14, where a ruling of the trial court that the action could not be maintained was upheld on exceptions.   In that

case it appeared that the mother, who was between four and five months advanced in pregnancy, was caused to fall by a highway defect and the fall brought on a miscarriage. It was said in an opinion by Holmes, J., that the child, although not directly injured unless by a communication of the shock to the mother, was too little advanced in foetal life to survive its premature birth, notwithstanding there was evidence of motion in the limbs for ten or fifteen minutes. The decision was cited in practically all subsequent cases respecting the right to recover for prenatal injury and until recently has been generally followed.

In *Bliss* v. *Passanesi*, 326 Mass. 461, decided in 1950, we sustained a demurrer to a declaration by an administrator in an action of tort alleging that while his intestate was "an existing viable child in her mother's womb," the mother fell on a defective stairway of the defendant and immediately thereafter "had severe pains which continued until the . . . intestate was born prematurely, and in consequence of the injuries received . . . died." After citing the prevalent cases bearing upon the point at issue, most of which followed the *Dietrich* decision, we said that, conceding the strength of arguments to the contrary, the *Dietrich* case "is still supported by the great weight of authority in other jurisdictions" and "we are not inclined to overrule" it (page 463).

In *Cavanaugh* v. *First Natl. Stores Inc.* 329 Mass. 179, 180–181, decided in 1952, a child brought an action by his next friend alleging in his declaration that on December 25, 1945, "he was a living entity, existing as a developing child, quick with life and viable in the womb of his mother . . . who then was pregnant with him for six months"; that his mother purchased and ate unfit turkey supplied by the defendant; that as a result she became sick and was caused next day to have a premature childbirth; and that the plaintiff "was born blind and . . . otherwise not fully, normally and naturally developed." On appeal from an order of the trial court sustaining a demurrer, we entered judgment for the defendant and after citing all cases which had been brought to our attention and Restatement: Torts,

§ 869, said, "Within recent years a body of contrary authority [to the *Dietrich* case] has been built up, allowing recovery by a child for prenatal injury. . . . We are not prepared to overrule our earlier decisions, which began nearly seventy years ago."

Since the decisions in the *Bliss* and *Cavanaugh* cases the distinct trend of judicial opinion has been to allow recovery in cases of prenatal injuries caused by negligence. This is shown by the following cases: *Amann* v. *Faidy,* 415 Ill. 422 (1953). *Steggall* v. *Morris,* 363 Mo. 1224 (1953). *Rainey* v. *Horn,* 221 Miss. 269 (1954). *Tursi* v. *New England Windsor Co.* 19 Conn. Supp. 242 (1955). *Mitchell* v. *Couch,* 285 S. W. 2d 901 (Ky. 1955). *Mallison* v. *Pomeroy,* 205 Ore. 690 (1955). *Worgan* v. *Greggo & Ferrara, Inc.* 50 Del. 258 (1956). *Poliquin* v. *MacDonald,* 101 N. H. 104 (1957). *Smith* v. *Brennan,* 31 N. J. 353 (1960). It is significant that the decisions in the above Missouri, Illinois and New Jersey cases were reversals of earlier decisions to the contrary.

Recent decisions against recovery are found in *Drabbels* v. *Skelly Oil Co.* 155 Neb. 17 (1951), *Howell* v. *Rushing,* 261 P. 2d 217 (Okla. 1953), *West* v. *McCoy,* 233 S. C. 369 (1958), and *Hogan* v. *McDaniel,* 204 Tenn. 235 (1958).

Reasons generally advanced for recognizing a child's right of action for prenatal injury are: Natural justice demands recognition of a legal right of a child to begin life unimpaired by physical or mental defects resulting from the injury caused by the negligence of another. A manifest wrong should not go without redress. Since the law protects an unborn child in the descent and devolution of property whenever it would be for the benefit of the child and in the enforcement of criminal law, the unborn child is regarded as a legal entity; therefore by analogy the law should recognize the right of an unborn child not to be injured tortiously by another.

These reasons are urged for denying recovery: The unborn child is a part of its mother. There is lack of precedent for permitting recovery. The principle of stare decisis should be followed. Proof of a causal relation between prenatal

injury and the death or resulting condition of the child depends upon speculation and conjecture. Recognition of a cause of action will give rise to fictitious claims.

No new reason has been advanced in recent cases for allowing recovery other than the growing body of precedent in favor of it and the progress made in medical science. A dominant influence on past and current opinion has been the dissenting opinion of Mr. Justice Boggs in *Allaire* v. *St. Luke's Hosp.* 184 Ill. 359, 368 (1900), a case in which the decision of the majority denying recovery was later reversed in *Amann* v. *Faidy*, 415 Ill. 422. Judge Boggs concluded (p. 374) that "whenever a child in utero is so far advanced in prenatal age as that, should parturition by natural or artificial means occur at such age, such child could and would live separable from the mother and grow into the ordinary activities of life, and is afterwards born and becomes a living human being, such child has a right of action for any injuries wantonly or negligently inflicted upon his or her person at such age of viability, though then in the womb of the mother." Stated somewhat differently, the dissenting opinion suggests that what Judge Holmes termed a conditional prospective liability is created when an unborn child, who has become a separable living entity, is injured by the wanton or negligent act of another, and that liability attaches on fulfilment of an implied condition that the child be born alive. This substantially is now held to be the law by a majority of the State appellate courts and by the District Court of the United States for the District of Columbia.

Our decision in the *Dietrich* case was based principally on the lack of supporting precedent at the time it was rendered. The later decisions in the *Bliss* and *Cavanaugh* cases were founded on the doctrine of stare decisis. We have held that "when a debatable question has been considered and definitely decided in a reasonable manner it is usually the part of wisdom, in the absence of important new considerations, to adhere to the decision made." See *Musolino LoConte Co.* v. *Boston Consol. Gas Co.* 330 Mass. 161, 165. Although this doctrine is salutary it may be more important in a given case

that the court be right, in the light of later examination of authorities, wider and more thorough discussion and reflection upon the policy of the law, than that it adhere to previous decisions. See *Mabardy* v. *McHugh*, 202 Mass. 148, 152.

We think it advisable that in respect to the subject of prenatal injury the law of this Commonwealth should be in general in harmony with that of the large and growing proportion of the other States which have adopted in principle the rule proposed by Judge Boggs. There is no need to reverse the *Dietrich* decision which doubtless was right when rendered but we recognize that in view of modern precedent its application should be limited to cases where the facts are essentially the same.

The plaintiff's declaration alleges receipt of a bodily injury by her intestate when a viable child in his mother's womb. We interpret the term viable child to mean a foetus so far formed and developed that if then born it would be capable of living. The declaration does not allege with sufficient certainty the fact, if true, that the child was born alive. If the child was stillborn the plaintiff would have no right of action. We think that the plaintiff should have an opportunity to amend her declaration. If she does so and states a cause of action in accordance with this opinion, the case is to stand for further proceedings, otherwise the order sustaining the demurrer is affirmed.

*So ordered.*