Antoinette **HOPKINS**, Plaintiff and Appellant,

v.

**R.D. McBANE, M.D., an individual, and The Mercy Hospital of Devils Lake, North Dakota, a non-profit corporation, Defendants and Appellees.**

**Civ. No. 10697.**

Supreme Court of North Dakota.

Dec. 31, 1984.

Robert J. Snyder, of Bickle, Coles & Snyder, Bismarck, for plaintiff and appellant.

Gerald J. Haga, of Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for defendant and appellee R.D. McBane.

Lee J. Balerud, of Tossett & Balerud, Minot, for defendant and appellee Mercy Hospital.

VANDE WALLE, Justice.

Antoinette Hopkins brought a wrongful-death action under Section 32–21–01, N.D. C.C., as surviving parent of Nelvette McDonald, a viable fetus whose death and resultant stillbirth, Antoinette asserts, was the result of the defendants' negligence. The district court entered a summary judgment dismissing the action on the ground that Section 32–21–01, N.D.C.C., does not authorize an action to be brought on behalf of a stillborn child. We reverse and remand for a trial on the merits.

At the time the alleged negligence of the doctor and hospital occurred, Antoinette was in her ninth month of pregnancy with her first child. It is undisputed that Antoinette was carrying a nine-month-old viable fetus.[1] When her membranes ruptured, Antoinette was admitted to the defendant hospital and was placed in the care of the defendant doctor. Antoinette asserts that the negligent care she received from the defendants resulted in the death and subsequent stillbirth of Nelvette.

The sole issue on appeal is whether or not Section 32–21–01, N.D.C.C., authorizes a wrongful-death action on behalf of a viable unborn child.

The courts which have dealt with this issue have reached conflicting results. See Annot., *Right To Maintain Action Or To Recover Damages For Death Of Unborn Child,* 84 A.L.R.3d 411 (1978). Each result depended upon an interpretation of the applicable wrongful-death statute in that jurisdiction. See Restatement (Second) of Torts, § 869(2) (1979).

Section 32–21–01, N.D.C.C., provides:

> "*32–21–01. When action for death by wrongful act maintainable.* Whenever the death of a person shall be caused by a wrongful act, neglect, or default, and the act, neglect, or default is such as would have entitled the party injured, if death had not ensued, to maintain an

---

1. In *Libbee v. Permanente Clinic,* 268 Or. 258, 518 P.2d 636, 637 n. 4 (1974), the court defined a viable unborn child as "one which has developed in its mother's womb to the point that it is capable of independent existence outside its mother's womb."

action and recover damages in respect thereof, then and in every such case the person who, or the corporation or company which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured or of the tort-feasor, and although the death shall have been caused under such circumstances as amount in law to felony."

The statute sets forth two requirements relevant to the issue before us to maintain an action: (1) a death caused by conduct which would have entitled the deceased to bring an action for damages if death had not ensued, and (2) the death of a person.

■ Consequently, to determine whether or not the statute authorizes a wrongful-death action on behalf of a stillborn child we must decide: (1) whether or not a child, if born alive, can bring an action for damages for prenatal injuries, and (2) whether or not the stillbirth of a child constitutes the "death of a person" for purposes of applying Section 32–21–01, N.D.C.C.

This court has not had an occasion to determine whether or not a child who is born alive can bring an action to recover damages for prenatal injuries incurred by the child as a result of the tortious conduct of another. Nearly every jurisdiction which has decided the issue has held that such a cause of action does exist. See Prosser and Keeton, *The Law of Torts*, Chapter 9, § 55, p. 368 (5th Ed.1984); Annot., *Prenatal Injuries—Liability*, 40 A.L. R.3d 1222 (1971). The existence of this type of action is recognized under subsection 1 of Section 869, Restatement (Second) of Torts (1979):

"One who tortiously causes harm to an unborn child is subject to liability to the child for the harm if the child is born alive."

We do not believe it necessary or particularly helpful to discuss the analysis and rationale underlying the authorities which recognize a cause of action for prenatal injuries. In accord with the nearly unanimous weight of authority, we hold that in this State there exists a cause of action by a child who is born alive for damages for prenatal injuries caused by the tortious conduct of another.

■ Section 32–21–01, N.D.C.C., also requires, as an element for bringing an action thereunder, the "death of a person." The district court concluded that the word "person" under the statute did not include an unborn child. The district court referred to Section 14–10–15, N.D.C.C., in effect at the time that Section 32–21–01, N.D.C.C., was enacted, as evidence that the Legislature did not consider an unborn child to be an existing person unless that child was subsequently born alive:

"*14–10–15. Unborn child—When deemed existing person.* A child conceived but not born is to be deemed an existing person so far as may be necessary for its interests in the event of its subsequent birth."

We believe that the district court misconstrued the foregoing provision. The purpose of that section is to ensure and to protect the interests of a child subsequent to its conception but prior to its birth. We believe that it would be inconsistent with that purpose to construe the section as a provision of limitation which denies "person" status to a stillborn child for purposes of applying the wrongful-death statute.

We are persuaded by the rationale of the Rhode Island Supreme Court in *Presly v. Newport Hospital*, 117 R.I. 177, 187, 365 A.2d 748, 753 (1976), that death before birth is an arbitrary criterion for denial of a wrongful-death cause of action:

"[I]f prenatal injury is wrongfully inflicted there is no perceptible reason why there should be a legally recognized difference between a death that occurs immediately before birth and one that occurs immediately after.... [I]t makes poor sense to sanction a legal doctrine that enables the tortfeasor whose deed brings about a stillbirth to escape liability but that renders one whose wrongdoing is less severe answerable in a wrongful death or other negligence action

merely because his victim survives birth." [Citations omitted.]

See also, *Volk v. Baldazo*, 103 Idaho 570, 651 P.2d 11 (1982); *Salazar v. St. Vincent Hospital*, 95 N.M. 150, 619 P.2d 826 (N.M. Ct.App.1980); *O'Neill v. Morse*, 385 Mich. 130, 188 N.W.2d 785 (1971); *White v. Yup*, 85 Nev. 527, 458 P.2d 617 (1969); *Kwaterski v. State Farm Mutual Automobile Insurance Company*, 34 Wis.2d 14, 148 N.W.2d 107 (1967).

Statutory words are to be construed in their ordinary sense. Section 1–02–02, N.D.C.C. We believe that it is commonly understood that an unborn child is a human being or person which has life and which, even prior to the process of birth, can experience death. See *O'Neill, supra.*

 Section 32–21–01, N.D.C.C., is a remedial statute whose purpose is to provide a right of action against one whose tortious conduct causes the death of another. Consequently, to the extent that it might be argued there is ambiguity under that Section, it should be construed liberally to accomplish its objective. See *Seablom v. Seablom*, 348 N.W.2d 920 (N.D. 1984); *State of Minnesota, County of Clay, Etc. v. Doty*, 326 N.W.2d 74 (N.D. 1982); *Falconer v. Farmers Union Oil Company*, 260 N.W.2d 1 (N.D.1977). See also, Section 1–02–01, N.D.C.C. Accordingly, we hold that Section 32–21–01, N.D. C.C., authorizes a wrongful-death action against one whose tortious conduct causes the death of a viable unborn child. We reverse the judgment of dismissal and remand for a trial on the merits of Antoinette's wrongful-death action.

PEDERSON and GIERKE, JJ., and ILVEDSON, Surrogate Judge, concur.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.

ILVEDSON, Surrogate Judge, sitting in place of ERICKSTAD, C.J., disqualified.